**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**


WILLIAM RUFFNER CHILTON, et al.,

                Plaintiffs,


v.                                         CIVIL ACTION NO.   2:12-cv-02090


ROBERT MAXWELL CHILTON, et al.,

                Defendants.


**MEMORANDUM OPINION AND ORDER**

This dispute centers on long-standing and rancorous sibling feuding concerning various family trusts and assets.  The Plaintiffs are William Ruffner Chilton and his sister, Cynthia Chilton Wilson.  Two of the Defendants are Plaintiffs' siblings, Robert Maxwell Chilton and Alice Chilton Zuber (sometimes referred to as the "Chilton Defendants").   Defendant United Bank, Inc. and United Bankshares Inc. (referred to collectively as "Defendants United Bank") serve as trustees to the trusts involved in this matter.   Kanawha Village Apartments, Inc. ("KVA") and Twelve Sixty-Six Corporation ("1266 Corporation") (sometimes referred to collectively as the "corporate Defendants") are the two closely-held Chilton family corporations.   These entities are the sole or primary assets of the various Chilton family trusts.

On June 15, 2012, the Plaintiffs filed a forty-five page Complaint alleging that for the past fifteen years the Chilton Defendants (Defendant Robert Maxwell Chilton in particular) and

Defendants United Bank have abused their positions as trustees over various trusts that were established for the benefit of the Chilton siblings by their now-deceased parents, William E. Chilton II and Nancy Maxwell Ruffner Chilton.   Plaintiffs also allege that Defendant Robert Maxwell Chilton, and at times Defendant Alice Zuber, have allegedly engaged in numerous acts of self-dealing.   At the heart of this dispute is Plaintiffs' contention that they and their children have not received their fair share of the Chilton family's wealth.

A dozen pretrial motions are pending, which the Court resolves as follows:

## I.   SUMMARY OF DECISION

(1)     Plaintiffs' motion for a temporary restraining order [ECF 2]—**DENIED AS MOOT**;
(2)     Plaintiffs' motion for expedited discovery [ECF 4] —**DENIED AS MOOT**;
(3)     The Chilton Defendants' motion to dismiss [ECF 12]—**DENIED**;
(4)     The Corporate Defendants' motion to dismiss Count VIII [ECF 19]—**DENIED**;
(5)     Plaintiffs' motion for a preliminary injunction [ECF 25]—**DENIED AS MOOT**;
(6)     Defendants United Bank's motion to dismiss for failure to state a claim [ECF 29]—**DENIED**;
(7)     The Corporate Defendants motion to dismiss for failure to join required parties [ECF 31]—**DENIED**;
(8)     Defendants United Bank's motion to exclude testimony or evidence [ECF 36] —**DENIED AS MOOT**;
(9)     The Chilton Defendants' motion to dismiss [ECF 41]—**DENIED**;
(10)    Plaintiffs' motion to file surreply [ECF 46] — **DENIED**;
(11)    Plaintiffs' motion to revise scheduling order [ECF 48]—**DENIED**;
(12)    Plaintiffs' motion to enter preliminary injunction order [ECF 49]—**GRANTED** as unopposed;
(13)    The Court **DIRECTS** the parties to fully brief, as directed *infra*, all issues concerning joinder of any necessary but absent persons and entities, file appropriate motions, and, if required, tender evidence in support of any additional motions as directed in this Opinion; and
(14)    The Court **STRIKES** the phrase "an individual" from the designation of both Chilton Defendants in the case caption.

*II. BACKGROUND*

*A. Parties*

According to Plaintiffs' Complaint, Plaintiff William Ruffner Chilton, a Michigan resident, and his sister, Cynthia Chilton Wilson, of Kentucky, are "the beneficial and/or legal owners of at least ten percent of the outstanding shares" of the two closely held West Virginian family corporations, Defendants 1266 Corporation and KVA.   (ECF 1 at 4.)   Plaintiff states that the family corporations are joined as Defendants only because they are required to name them under West Virginia Code § 31D-8-809(c) and, in their prayer for relief, Plaintiffs do not seek any relief from these corporate Defendants.    Defendant Robert Maxwell Chilton is a West Virginia resident and his sister, Defendant Alice Chilton Zuber, resides in Illinois.   Although not entirely clear, it appears from the Complaint that Defendant Robert Chilton is the president of both 1266 Corporation and KVA and is chairman of 1266 Corporation's board of directors.   Alice Zuber is the vice-president of both corporations.   Both Chilton Defendants sit on both corporate boards of directors.

Plaintiffs allege that 1266 Corporation and KVA are the principal assets of trusts created by Plaintiffs for their own benefit, as well as certain other family trusts in which Plaintiffs have beneficial interests, and that Defendant Robert Maxwell Chilton is either a sole trustee or co-trustee of many, if not all, of these trusts.   Defendants United Bank, West Virginia corporations, are the successors to the original co-trustee of trusts created by the Chilton siblings' deceased parents, William E. Chilton, II and Nancy Maxwell Ruffner Chilton for the benefit of their five children.   (The oldest of the Chilton children was, Nancy Chilton Nelson Knapp.   Ms.

3

Knapp died in 1975 prior to the death of her parents.   Ms. Knapp's heirs own shares in 1266 Corporation and KVA.)

       B.       *Defendants 1266 Corporation and Kanawha Village Apartments, Inc.*

           *1. Defendant 1266 Corporation*

The Complaint states that 1266 Corporation and KVA were formed by the Chilton siblings' parents and, over time, various transfers of stock occurred.   Defendant 1266 Corporation is named for the Chilton family's stately and historic family residence located at 1266 Louden Heights Road, Charleston, West Virginia.   It is the childhood home of the Chilton siblings.   It is also the current residence of Defendant Robert Chilton, a fact, which, as discussed later, engenders much irritation for the Plaintiffs.   1266 Corporation has a total of 500 shares of stock.   These shares, according to Plaintiffs, are allocated as follows:

- 100 shares are owned by the Cynthia Chilton Park trust ("Plaintiff Cynthia Wilson's trust"), a trust established for Plaintiff Cynthia Wilson's benefit and of which Defendant Robert Chilton serves as the trustee;

- 100 shares are owned in total by: the William Ruffner Chilton trust ("Plaintiff William Chilton's trust"), a trust established for Plaintiff William Chilton's benefit (24 shares) and which Defendant Robert Chilton serves as the trustee; and four of Plaintiff William Chilton's children (19 shares each);

- 100 shares are owned in total by the Alice Chilton Zuber Trust (52 shares) and, the Court assumes, two of her children (24 shares each);

- 100 shares are owned in total by: Defendant Robert Chilton (1 share); three trusts that appear to be somehow connected with Robert Chilton (8 shares each); three, presumably, of Robert Chilton's children or grandchildren (a total of 65 shares), and Robert Chilton's wife, Jane Cline Chilton (10 shares);

- 100 shares are owned in total by the estate of Caroline C. Franklin, Kristina Nelson Rucker, and Oscar Nelson III (33.33 shares each), presumably, children of the Chilton siblings' deceased sister, Nancy.

4

Accordingly, each of the five Chilton children, their children or heirs, or trusts in which they are beneficiaries, have, directly or indirectly, equal twenty-percent stakes in 1266 Corporation. Plaintiffs contend that the 100 shares that purportedly owned by Plaintiff Cynthia Wilson's trust are in fact owned by her directly. Plaintiffs contend that their father actually gave the stock certificates for these shares to Cynthia, but that Defendant Robert Chilton "improperly" placed this in Cynthia's trust. As it presently stands, at least on 1266 Corporation's books, the total shares owned by both Plaintiffs' trusts (124 shares) are controlled by Defendant Robert Chilton because he is the trustee of both trusts. These 124 shares, coupled with the Chilton Defendants' combined 200 shares, constitute 65% of the shares of 1266 Corporation, a fact which, according to Plaintiffs, has permitted the Chilton Defendants to exercise "complete control" over 1266 Corporation.

### 2.      *Defendant Kanawha Village Apartments, Inc.*

Defendant KVA owns "an extensive portfolio of commercial and residential rental real estate in the Charleston, West Virginia area." (ECF 1 at 11.) Unlike 1266 Corporation, which appears to generate no income and requires substantial funds to maintain the Chilton family residence, the rental properties that comprise KVA generate substantial income. Defendant KVA has a total of 2,550 shares. Plaintiffs claim that 400 of these shares are improperly listed as an asset of the Cynthia Noyes Chilton trust. Plaintiffs claim that in 1978 these shares were placed in a trust for her benefit denominated as "The Cynthia C. Quattrochi Trust".[1] Plaintiffs' father and Defendant Robert Chilton served as trustees of this trust. Plaintiffs assert that in 1990 Defendants United Bank advised Plaintiff Cynthia Wilson that this trust had been closed for ten years and that the 400 shares in KVA were given to Plaintiffs' mother to pay off a $35,000 debt purportedly owed

---

1    Apparently, Plaintiff Cynthia Wilson was formerly known as Cynthia C. Quattrochi.

by Cynthia Wilson.   Plaintiffs claim that United Bank has failed to respond to their demands for documentation corroborating these events.   It appears that in October 2010, Cynthia Wilson wrote United Bank, "revoked her 1978 trust and demand[ed] delivery of her stock."   (*Id.* at 12.) Plaintiffs claim that the 400 shares were then placed in trusts for her benefit which named her father, Defendant Robert Chilton, and Defendants United Bank as co-trustees.   Upon her father's death, Plaintiff Cynthia Wilson "designated herself as co-trustee" of the trust that holds the 400 shares.

The shares in Defendant KVA are, at least as far as KVA records are concerned, allocated as follows:

- 90 shares are owned by Plaintiff Cynthia Wilson's trust;

- 90 shares are owned by Plaintiff William Chilton's trust;

- 490 shares are owned by Defendant Alice Zuber (458 shares) and, presumably, her children (32 shares total);

- 458 shares in total are owned by Defendant Robert Chilton (304 shares); three trusts that appear to be somehow connected with Robert Chilton (90 shares); and two of Robert Chilton's children (32 shares each);

- 522 shares in total are owned by the heirs of the Chilton siblings' deceased sister, Nancy Knapp;

- 500 shares in total are owned by the William E. Chilton II trust (a trust established by the Chilton siblings' father and in which Defendant Robert Chilton and Defendants United Bank are co-trustees); and

- 400 shares are owned by the Cynthia Noyes Chilton trust (another trust where Defendant Robert Chilton serves as trustee).

### III.   PLAINTIFFS' CLAIMS

Plaintiffs sprinkle a variety of claims throughout ten separately numbered sections of their forty-five page Complaint.[2] (*See* Sections designated "V" through "XII").   These claims generally assert sundry acts of self-dealing by the Chilton Defendants, including: (1) Defendant Robert Chilton's rent-free occupation of the Chilton family's Louden Heights residence; (2) Defendant Robert Chilton's execution of a $147,000 promissory note to Defendants United Bank in the name of 1266 Corporation that included personal debts of Robert Chilton and was secured by a deed of trust on the Chilton family home and assignment of rents from KVA; and (3) the Chilton Defendants' purported siphoning of funds from KVA to pay for capital improvements to the Chilton family home, as well as their charging a variety of Defendant Robert Chilton's basic living expenses (*e.g.* utilities, real estate taxes, and residential maintenance costs such as grass cutting and small repairs) to 1266 Corporation. (*See id.* at Section "V".)

Another form of alleged self-dealing concerns breaches of fiduciary duties of the various trustees and corporate officers and directors.   These claims assert that the "Defendants" (presumably including Defendants United Bank) failed to diversify the investment portfolios of the trusts created for Plaintiffs' benefit.   Plaintiffs posit that if the portfolios had been properly managed, Plaintiffs would have had annual income triple that of the approximately $18,000 Plaintiffs have received on average over the past decade or so.   Plaintiffs further claim that the Chilton Defendants have purposely held back payment of income to current beneficiaries because

---

2   Plaintiffs' lengthy and often rambling Complaint is not the paradigm of effective pleading.   The Complaint fails to separate the Plaintiffs' formal claims into in specific counts in the customary manner.   Rather, the Complaint contains fifteen numbered sections, some of which contain purely factual allegations and background, and others appear to assert actual claims.

the future beneficiaries do not include Plaintiffs' children, a fact that Plaintiffs attribute to Defendant Robert Chilton's duplicity.

Section "VI" of the Complaint, concerns the Chilton Defendants' planned merger of 1266 Corporation and KVA.  Plaintiffs oppose the merger.  They claim that the valuations of 1266 Corporation and KVA are skewed and unfair to Plaintiffs.  They assert that the Chilton Defendants, as trustees of Plaintiffs' trusts, have a conflict of interest in voting the shares held in the Plaintiffs' trust in favor of the merger.   Plaintiffs also claim that Defendant Robert Chilton has "caused the boards of directors" of both family corporations to vote in favor of the proposed merger and that the directors' decisions are voidable under W. Va. Code § 31D-8-831 because, among other things, of the Chilton Defendants' domination and control over the other board members, all of whom are family members.   Other allegations asserted by Plaintiffs are that the proposed stock exchange ratio for the corporate merger is not supported by a competent appraisal, that notice to the shareholders of the proposed merger was deficient, and the merger plan omitted material facts, all in violation of West Virginia law.

The remaining sections of the Complaint are somewhat more efficiently pleaded.   Section "VII" requests an order from the Court removing, pursuant to West Virginia Code § 44D-7-706, the Chilton Defendants as trustees from all trusts established for Plaintiffs' benefit.   Plaintiffs also request an order, pursuant to West Virginia Code § 31D-8-809, removing and barring the re-election of the Chilton Defendants as officers and directors of 1266 Corporation and KVA.

Section "VIII" requests, pursuant to West Virginia Code § 31D-14-1430, appointment of a receiver and judicial dissolution of 1266 Corporation and KVA, as well as the appointment of "an interim trustee of all trusts for the express purpose of insuring that all trust beneficiaries receive

their fair share of the proceeds from the dissolution of the closely-held corporations."   (ECF 1 at 34.)   Section "IX" requests an accounting of all transactions in the trusts created for Plaintiffs' benefit and for which the Chilton Defendants serve as trustees.   This section requests compensatory damages and "punitive damages in an amount appropriate under controlling judicial decisions in this jurisdiction, but at an amount of not less than three times the amount of compensatory damages."   Plaintiffs further request an order evicting Defendant Robert Chilton from the Louden Heights residence, damages relating to his "decade-long, rent-free occupation" of the Chilton family home, and an order barring his removal of personal property belonging the siblings' parents.

Section "X" alleges that Defendant Robert Chilton misappropriated "hundreds of thousands of dollars" of life insurance proceeds from insurance policies relating to the siblings' maternal grandfather, Robert E. Lee Ruffner.   (*Id.* at 37.)   Plaintiffs claim that these funds should have been included in various family trusts of which Plaintiffs are beneficiaries.

Section "XI" alleges that Defendant Robert Chilton used "undue influence to cause his parents to revise their trusts in 1989, at a time when his parents lacked adequate mental capacity, to cut [Plaintiffs' children] out of any inheritance."   (*Id.*)

Section "XII" alleges that the Chilton Defendants breached their fiduciary duties in a variety of ways including mismanaging and misappropriating trust assets relating to Plaintiffs' individual trusts and the family trusts established for their benefit.   The Chilton Defendants allegedly violated West Virginia Code § 44-6C-1, *et seq.* and common law by failing to exercise reasonable care in the investment and management of the trust assets.

Section "XIII" alleges that the Chilton Defendants violated their duties under West Virginia Code § 44-6C-6 to treat the beneficiaries of the trusts with impartiality.   Plaintiffs allege that the Chilton Defendants paid to themselves, directly or indirectly, "grossly disproportionate shares of the income and other assets of the collective trusts" or from the family corporations. Plaintiffs ask the Court to order that the Chilton Defendants make "catch-up" payments to Plaintiffs.

Finally, section "XIV" alleges that Defendants United Bank breached their fiduciary duties in no fewer than twenty-four enumerated ways, all in violation of West Virginia Code §44D-7-703(g).

The final section (erroneously enumerated as section "XIII") sets out Plaintiffs' prayer for relief, which reiterates the various requests for relief set out elsewhere in the Complaint, as well as a request for attorneys' fees, costs, and interest.

## IV.   PENDING MOTIONS

### A.   Motions Relating to Requests for Temporary and Preliminary Injunctions

On June 15, 2012, the same day they filed their Complaint, Plaintiffs filed a motion for a temporary injunction order [ECF 2] and a motion for expedited discovery in aid of the temporary injunction order [ECF 4].   On June 22, 2012, the Court conducted a hearing on the motions and, based on the parties' standstill agreement, the Court scheduled a preliminary injunction hearing for July 18, 2012.   On July 6, 2012, Plaintiffs filed their motion for preliminary injunction order [ECF 25].   On July 13, 2012, Defendants United Bank moved to exclude certain evidence at the July 18, 2012 preliminary injunction hearing [ECF 36].

10

At the July 18, 2012 hearing, the parties advised the Court that they had entered into agreements respecting the Plaintiffs' motions and that agreement eliminated the need for a hearing.   On February 27, 2013, Plaintiffs filed a motion requesting the Court enter one of two proposed versions of a permanent injunction order [ECF 49].   No Defendant responded to the motion.

Accordingly, in light of the foregoing, the Court **DENIES AS MOOT** Plaintiffs' motions for temporary and permanent injunctions [ECF 2, 25] and their motion for expedited discovery [ECF 4].   The Court also **DENIES AS MOOT** Defendants United Bank's motion to exclude evidence [ECF 36].   The Court **GRANTS** as unopposed Plaintiffs' motion to enter preliminary injunction order [ECF 49].

B.        *Defendants' Motions to Dismiss*

1.        *Chilton Defendants' Motion to Dismiss*

The Chilton Defendants filed two motions to dismiss [ECF 12 & 41].[3]   In their first motion to dismiss, they argue that dismissal is appropriate on two grounds:   (1) the Complaint fails to state a claim on which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (2) pursuant to Federal Rule of Civil Procedure 12(b)(7), Plaintiffs failed to join required, absent persons under Federal Rule of Civil Procedure 19.

a.        *Chilton Defendants' Rule 12(b)(6) Argument*

In support of their failure to state a claim argument, the Chilton Defendants contend that because Plaintiffs are not "shareholders" as defined under the West Virginia Business Corporation

---

3   Both of these motions violate the Court's Local Rules of Civil Procedure and the provisions of the Court's Administrative Procedures for Electronic Case Filing (rev. Nov. 2012) because they do not contain separate memoranda in support of the motions.   *See* L.R. Civ. P. 7.1(a)(1) & (2) and Section 10 of the Court's Administrative Procedures for Electronic Case Filings.   Counsel are cautioned to adhere to the Court's rules in future filings.

Act [West Virginia Code §§ 31D-1-101, *et seq.*], they cannot bring a shareholder derivative suit. In response, Plaintiffs contend that the statutory definition of "shareholder" under the West Virginia Business Corporation Act does not apply to them because their shareholder derivative suit is rooted in common law and is not statutorily based. As such, Plaintiffs reason that they have standing to bring a derivative shareholders suit because Plaintiffs have beneficial interests in the trusts and, under *Felsenheld v. Bloch Bros. Tobacco Co.,* 192 S.E. 545 (W. Va. 1937), may prosecute a shareholders' derivative suit as beneficial owners of those interests.

Prior to the enactment of the West Virginia Business Corporation Act of 2002, shareholder derivative suits were governed by West Virginia Code § 31-1-103. This statute provided corporations with some protection from frivolous derivative lawsuits by the requirement that a shareholder be a "holder of record of shares or of voting certificates" at the time of alleged transactions. An exception to this rule afforded standing if a plaintiff's present shares or voting certificates were inherited from a person who was a shareholder at the time of the complained events. W. Va. Code § 31-1-103 (2001). Moreover, a judge could award attorneys' fees and costs in cases brought without reasonable cause, and a defendant could require a plaintiff holding less than five percent of the shares (if valued at $25,000 or less) to post security. *Id.* In 2002, however, the West Virginia State Legislature repealed § 31-1-103 leaving nothing other than common law to guide future derivative shareholder actions. *See* Heather Flanagan, *The Difficulty of a Plaintiff's Playground being truly "Open for Business": An Overview of West Virginia's Corporate Law Governing Derivative Suits*, 110 W. Va. L. Rev. 883, 898 (2008).

Prior to the repeal of § 31-1-103 there was some authority that this statute permitted persons with beneficial ownership of shares to bring a derivative shareholder action pursuant to

§31-1-103 and Rule 23.1 of the Federal Rules of Civil Procedure even though the person was not a shareholder of record.  In *Silling v. Erwin*, 881 F. Supp. 236 (S.D. W. Va. 1995), the plaintiff inherited his father's majority shareholder interest (50.1%) in the father's corporation.  *Id.* at 238. During the father's lifetime, he never declared a dividend. *Id.*  The plaintiff contended that dividends should have been paid when the corporate debt had been paid off. *Id.*  The plaintiff, even though his father was the majority shareholder, brought a derivative shareholder claim against the corporation for suppressing dividends.  *Id.*  The parties agreed that "beneficial ownership of shares is sufficient to bring a derivative action under Rule 23.1 of the Federal Rules of Civil Procedure and West Virginia Code Section 31-1-103." *Id.* at 239.  The parties disagreed, however, whether plaintiff was in fact a beneficial owner.  *Id.*  In answering this question Chief Judge Haden turned to *Felsenheld v. Bloch Bros. Tobacco Co.*, the case cited by the Chilton Plaintiffs, and noted that *Felsenheld* stood for the proposition that persons with "a clear beneficial interest in a corporation may bring a derivative suit without being shareholders of record."  *Id*.  Judge Haden further found that beneficiaries of a trust holding stock are equitable shareholders who may bring an action against the corporation.  *Id.*  The court concluded however, that the plaintiff's claim was too remote to be considered "beneficial" because he was not the beneficial owner of the shares at the time of the alleged wrongful actions.

Here, Plaintiffs are indisputably have (and have had) a beneficial interest in trusts that hold stock in 1266 Corporation and KVA.   Indeed, Plaintiff Cynthia Wilson asserts that she is in fact the *legal* owner of the stock in 1266 Corporation and that the stock was improperly placed in trusts for her benefit.  She further contends that she is a co-trustee of her individual trust.  Because there is not any—much less conflicting— statutory scheme governing derivative shareholder suits

13

in West Virginia, the appropriate source of law governing this matter is West Virginia common law.   Based on *Felsenheld* and *Silling* it is clear that Plaintiffs have standing to prosecute a derivative shareholders action against the Defendants.   Accordingly, the Chilton Defendants' motions to dismiss [ECF 12 & 41] are **DENIED** as to the argument that Plaintiffs lack standing to bring a derivative shareholder suit.

### b. Chilton Defendants' Rule 12(b)(6) Argument

As for their failure to join required parties argument under Federal Rule of Civil Procedure 12(b)(6), Defendants contend that Plaintiffs have failed to join John Barrett, a co-trustee to one of the Chilton family trusts of which Plaintiffs are beneficiaries.   In response, Plaintiffs argue that the Court must deny the Chilton Defendants' motion to dismiss because John Barrett is not an "indispensable" party for the simple reason that he is a West Virginia resident whose presence, if joined as a party, would not destroy diversity.   Stated differently, Plaintiffs essentially argue that "indispensability" is a term of art that only applies if the party is both *necessary* under Rule 19(a) *and* is of such importance to the interests at stake that the action should be dismissed under Rule 19(b) if he cannot be joined.   Plaintiffs contend that a motion to dismiss under Rule 12(b)(7) can only succeed if the Defendants can show that the absent person is necessary, cannot be joined for jurisdictional reasons, and whose interests are so weighty that the case cannot proceed in his or her absence and must be dismissed.

Plaintiffs clearly have the better argument here.   Under Rule 19(a)(1) of the Federal Rules of Civil Procedure a person

> who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

14

**(A)**   in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)**   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

    **(i)**   as a practical matter impair or impede the person's ability to protect the interest; or

    **(ii)**   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

The Court must order such "necessary" persons be made parties.   Fed. R. Civ. P. 19(a)(2). Moreover, a person "who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff."   *Id.*   Thus, if the Court finds that a party is "necessary" under Rule 19(a), the Court must order that such a person be made a party, not dismiss the case. Dismissal is, however, one of two options under Rule 19(b) if the joinder of a necessary party is not feasible.   In that event the Court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."   Fed. R. Civ. P. 19(b). In making that determination, the following factors are considered:

**(1)**   the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

**(2)**   the extent to which any prejudice could be lessened or avoided by:

    **(A)**   protective provisions in the judgment;
    **(B)**   shaping the relief; or
    **(C)**   other measures;

**(3)**   whether a judgment rendered in the person's absence would be adequate; and

**(4)**   whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

15

Fed. R. Civ. P. 19(b)(1)–(4).

It is apparent that John Barrett's presence as a party in this suit will not destroy this Court's diversity jurisdiction.   The question, however, remains whether Mr. Barrett is a "necessary" party to this case.   It appears that he is a co-trustee to one of the Chilton family trusts that is under attack by Plaintiffs in this case.   Based on the record as it now stands and inadequate briefing by the parties, the Court lacks sufficient evidence to make this finding and for this reason, the Court **DENIES** the Chilton Defendants' motions to dismiss [ECF 12, 41] to the extent that they are predicated on dismissal under Rule 12(b)(7).

The issue of whether John Barrett is in fact a necessary party is important to resolve. Also, although not the subject of any of the Defendants' motions, the Court is concerned that, given the broad scope of Plaintiffs' allegations and relief they request (*e.g.* orders blocking the merger of 1266 Corporation and KVA (ECF at 21-32), declaring the meaning of corporate by-laws (ECF at 30), removing the Chilton Defendants as trustees and corporate officers of closely-held family companies (ECF at 32-33), appointing an interim trustee of "all trusts" and terminating "all trusts" (ECF at 33-34)), the Court has grave concerns that there are other persons—perhaps many other persons—who interests are affected in a manner requiring their joinder under Rule 19.   For example, there are more than two dozen persons and entities that appear to own shares in 1266 Corporation and KVA.   There are a half a dozen persons who serve on the corporate boards who are not presently parties in this case.   Plaintiffs' Complaint references more than a dozen Chilton trusts.   Although it may well be that all, some, or none of these persons and entities are necessary parties, their interests should be carefully examined in light of the extraordinary breadth of the relief Plaintiffs seek.

16

Accordingly, the Court **DIRECTS** the parties to fully brief these issues by appropriate motions and, if necessary, tender evidence in support of any such motions **on or before April 22, 2013**.  Responses and replies will be due according to Local Rules.

> c.   *Chilton Defendants' Argument Regarding Plaintiffs' Failure to Name the Chilton Defendants in their Fiduciary Capacities*

In their second motion to dismiss [ECF 41], the Chilton Defendants expand upon their argument that Plaintiffs failed to join required parties.  This time they contend that, while Plaintiffs named the Chilton Defendants in their *individual* capacities, they failed to name them in their *fiduciary* capacities.   In light of the nature of Plaintiffs' claims, the Chilton Defendants argue that this omission renders the Plaintiffs' Complaint fatally deficient.

Plaintiffs argue that their Complaint plainly and repeatedly makes clear that the Chilton Defendants are in fact being sued in the fiduciary capacities.   Plaintiffs affirmatively state more than once that their lawsuit "is **_not_** a suit against the trust. (ECF 44 at 8-9.)   Rather, it is a suit against the "trustees for breaches of duties in their administration of the trust" and that a judgment against the Chilton Defendants for breach of their fiduciary duties will be collected from the Chilton Defendants personally.   (*Id.* at 8.)

In the caption of their Complaint, Plaintiffs identify Defendant Robert Maxwell Chilton as "an individual". (ECF 1 at 1.)   The same form is applied to Defendant Alice Chilton Zuber. (*Id.*)  The Court observes that pursuant to Federal Rule of Civil Procedure 9(a)(1), generally a pleading need not allege a party's capacity to be sued.   In light of Plaintiffs' explicit concession that they intend to prosecute their claims against the Chilton Defendants in their individual and fiduciary capacities, the Court will construe Plaintiffs' allegations against the Chilton Defendants to be against these Defendants as individuals and fiduciaries.   Thus, the Court **STRIKES** the phrase

17

"an individual" from the designation of both Chilton Defendants in the case caption.   This was the sensible remedy the district court in *Castleglen, Inc. v. Commonwealth Savings Ass'n*, 118 F.R.D. 515, 516 (D. Utah 1988) employed under similar circumstances.   Accordingly, the Court **DENIES** the Chilton Defendants' motions to dismiss [ECF 12, 41] to the extent they are predicated on Plaintiffs' failure to name the Chilton Defendants' in their capacity as fiduciaries.

### 2.   *Defendants 1266 Corporation's and KVA's Motions to Dismiss*

Defendants 1266 Corporation and KVA move to dismiss Count VIII of the Complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).[4] [ECF 19.]   Defendants reason that Plaintiffs cannot obtain judicial dissolution of the two family corporations because they are not shareholders under the statutory definition of that term.   Under West Virginia Code §31D-1-150(21) a "shareholder" is "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation."   Because Plaintiffs are merely beneficiaries of trusts that own shares in the corporations, Defendants 1266 Corporation and KVA argue Plaintiffs lack standing to seek judicial dissolution.

The problem with the corporate Defendants' argument, as Plaintiffs point out, is that the Complaint alleges that Plaintiffs "are the beneficial and/or legal owners of at least ten percent of the outstanding shares" of the corporate Defendants.   (ECF 1 at 4.)    Plaintiffs allege that in the course of discovery they will ascertain that the 100 shares of 1266 Corporation stock purportedly

---

4    As with the Chilton Defendants' motions, the corporate Defendants' motions violate the Court's Local Rules of Civil Procedure and the provisions of the Court's Administrative Procedures for Electronic Case Filing (rev. Nov. 2012) because they do not contain separate memoranda in support of the motions.   *See* L.R. Civ. P. 7.1(a)(1) & (2) and Section 10 of the Court's Administrative Procedures for Electronic Case Filings.   Counsel are cautioned to adhere to the Court's rules in future.

held in trust for Plaintiff Cynthia Chilton were in fact given to her by her father.   (*See* ECF 1 at 10.)   Plaintiffs also contend that Plaintiff Cynthia Wilson is a co-trustee of her individual trust and, thus, is a legal owner on the books and records of [KVA]."   (*Id.* at 11.)

It is fundamental that in reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations."   *E. Shore Markets, Inc. v. J.D. Associates Ltd. Partnership,* 213 F.3d 175, 180 (4th Cir. 2000).   When considering a motion to dismiss, a court "accept[s] as true all well-plead allegations and view[s] the complaint in the light most favorable to the plaintiff." *Sec. of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007); *see also Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir. 1991).

Based on these principles and the record as it now stands, the Court **DENIES** the corporate Defendants' motion to dismiss Count XIII [ECF 19].

Defendants 1266 Corporation and KVA also move to dismiss based on the Plaintiffs' failure to join required parties under Federal Rule of Civil Procedure 19.   [ECF 31.]   Their argument is similar to that made by the Chilton Defendants *supra*.   The Court **DENIES** the motion to dismiss [ECF 31] for the same reasons given in connection with the denial of the Chilton Defendants' motion.

C.      *Miscellaneous Motions*

Also pending are: (1) Plaintiffs' motion to file a surreply to the Chilton Defendants' Reply [ECF 45] in support of their motion to dismiss [ECF 46] and (2) Plaintiffs' motion to revise the

scheduling order [ECF 49.]   These motions are **DENIED.**

       **IT IS SO ORDERED**.

       The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

       ENTER:      March 29, 2013

       THOMAS E. JOHNSTON
       UNITED STATES DISTRICT JUDGE

20